IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ERNESTO VASQUEZ<br>(BOP Register No. 47059-177), | § <br> § <br> § | |
| Movant, | § <br> § | |
| V. | § <br> § | No. 3:16-cv-2623-D-BN |
| UNITED STATES OF AMERICA, | § <br> § <br> § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Movant Ernesto Vasquez, a federal prisoner, initially proceeding *pro se*, filed a

28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence. *See* Dkt. No. 2. This

resulting action has been referred to the undersigned United States magistrate judge

for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference

from Senior United States District Judge Sidney A. Fitzwater. With the benefit of an

evidentiary hearing, the undersigned enters these findings of fact, conclusions of law,

and recommendation that the Court should deny the Section 2255 motion as meritless.

**Applicable Background**

Vasquez pleaded guilty to a single count of possession of a controlled substance

with intent to distribute. *See United States v. Vasquez*, No. 3:13-cr-411-D (04) (N.D.

Tex.), Dkt. No. 159. In support of his guilty plea, he signed a factual resume in which

he stipulated as follows:

> On or about September 13, 2013, in the Dallas Division of the
> Northern District of Texas and elsewhere, [Vasquez], aiding and abetting

his co-defendants, knowingly possessed with intent to distribute a mixture or substance containing [] a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(C) and 18 U.S.C. § 2.

On September 13, 2013, [Vasquez] delivered approximately five and one-half kilograms of methamphetamine to an individual working on behalf of the Texas Department of Public Safety. The methamphetamine delivery was made in payment for a high-end automobile given to a co-defendant earlier that same day. All of this occurred in the Dallas Division of the Northern District of Texas.

At approximately 5:30 P.M. that day, a Ford F-150 driven by [Vasquez] and in which a co-defendant was the lone passenger, arrived at a commercial shopping center parking lot in Dallas, Texas to provide the methamphetamine to the cooperating individual. While under law enforcement surveillance, the cooperating individual entered the defendants' F-150, retrieved the methamphetamine from Vasquez and his co-defendant, and exited the vehicle.

*Id.*, Dkt. No. 81 at 2-3

At Vasquez's rearraignment hearing, he testified that he understood the superseding information, the plea agreement, the plea agreement supplement, and the factual resume, and he also swore that, before the hearing, each of those documents had been translated into Spanish and explained to him. *See id.,* Dkt. No. 189 at 6, 10, & 20. He waived the Court's offer to have its interpreter read those documents to him in Spanish, *see id.* at 7, 10, & 20, and his counsel affirmed to the Court that he had no reason to think that Vasquez did not understand them, *see id.* Vasquez further admitted on "[his] oath in open court that the stipulated facts are true and correct in every respect." *See id.* at 21.

The Court advised Vasquez of his potential sentence – "a maximum period of imprisonment of 20 years" – and made plain that the Court alone would fashion Vasquez's sentence if he pleaded guilty:

THE COURT: Has anyone made any prediction or promise to you as to what your sentence will be?

[VASQUEZ] (Through Interpreter): No.

THE COURT: Do you understand that I, and I alone, will decide what your sentence will be?

[VASQUEZ] (Through Interpreter): Yes.

THE COURT: When you and [counsel] were discussing whether you wanted to plead guilty in this case did he discuss with you the advisory sentencing guidelines?

[VASQUEZ] (Through Interpreter): Yes.

THE COURT: Did he explain to you generally how the advisory guidelines work?

[VASQUEZ] (Through Interpreter): Yes.

THE COURT: And do you understand that the guidelines are advisory, meaning that I am required to consult them and to take them into account in determining your sentence but that they are not binding upon me?

[VASQUEZ] (Through Interpreter): Yes.

THE COURT: Do you understand that I am required by law to impose a sentence that reflects the seriousness of your offense, promotes respect for the law, provides just punishment for the offense, affords adequate deterrence, protects the public, and effectively provides you with needed educational or vocational training, medical care or other correctional treatment?

[VASQUEZ] (Through Interpreter): Yes.

THE COURT: When you and [counsel] discussed the advisory sentencing guidelines did he give you his professional opinion concerning what he thought the advisory guideline range might be in your case?

[VASQUEZ] (Through Interpreter): Yes.

THE COURT: Do you understand that when he did that he was expressing a professional opinion based upon his experience and expertise in criminal law and in the sentencing guidelines, but that he was expressing a professional opinion, not a guarantee or promise?

[VASQUEZ] (Through Interpreter): Yes.

THE COURT: Do you understand that neither I nor [counsel] will be able to determine the advisory guideline range for your case until after a written presentence report has been completed and you and the government have each been given an opportunity to object to the facts contained in the presentence report as well as the advisory guideline range?

[VASQUEZ] (Through Interpreter): Yes.

THE COURT: So do you understand that no one, including your attorney,

-3-

can predict in advance what your sentence will be?

[VASQUEZ] (Through Interpreter): Yes.

THE COURT: Do you understand that after it has been determined what guideline range applies to your case, I have the authority to impose a sentence that is more sever than the sentence called for by the advisory guidelines?

[VASQUEZ] (Through Interpreter): Yes.

THE COURT: Do you understand that in some circumstances you or the government may have the right to appeal my sentence?

[VASQUEZ] (Through Interpreter): Yes.

THE COURT: And do you understand that in paragraph 11 of your plea agreement, which is found on the bottom of page 5, you are waiving your right of appeal and of postconviction challenge to your conviction and sentence, except in very limited circumstances?

[VASQUEZ] (Through Interpreter): Yes.

THE COURT: When you entered paragraph 11, in particular, did you understand the rights you were giving up and did you voluntarily decide to give up those rights?

[VASQUEZ] (Through Interpreter): Yes.

...

THE COURT: Do you also understand that if the sentence I impose is more severe that you expected, you will still be bound by your plea of guilty and you will have no right to withdraw your guilty plea?

[VASQUEZ] (Through Interpreter): Yes.

*Id.* at 14-19.

The Court accepted Vasquez's plea of guilty and later sentenced him to 135 months of imprisonment. *See United States v. Vasquez*, No. 3:13-cr-411-D (04) (N.D. Tex.), Dkt. No. 159. After an unsuccessful direct appeal, *see United States v. Vasquez*, 633 F. App'x 616 (5th Cir. 2016) (per curiam), Vasquez timely filed this Section 2255 motion, *see* Dkt. No. 2; 28 U.S.C. § 2255(f)(1).

Vasquez raises numerous, overlapping claims of ineffective assistance of counsel ("IAC"). He first challenges his trial counsel's conduct during the plea, arguing that, because he is innocent and "was framed," counsel was ineffective when he failed to

further investigate the drug conspiracy and instead "negotiated a [p]lea [a]greement despite the lack of eviden[c]e for the charges." Dkt. No. 2 at 10. Vasquez further claims that his trial counsel rendered his guilty plea unknowing and involuntary when he failed to advise Vasquez about either "the guilty plea and the elements of the offense" or the waiver of his appellate rights and when he failed to translate into Spanish the plea agreement, the factual resume, and the presentence report. *Id.* at 10-12. Vasquez adds that counsel "induced" and "coerced" him into pleading guilty on an empty promise that he "was just going to be [sentenced to] 3 years of incarceration." *Id.* at 10-11.

Vasquez also challenges his trial counsel's conduct at sentencing, arguing that counsel was ineffective when he failed to object to prosecutorial misconduct, *see id.* at 13 (arguing that counsel failed to object when the prosecutor submitted Vasquez's factual resume, which he claims is false), and failed to request a minor-role adjustment and a safety-valve reduction, *see id.* at 14.

And he claims – without further explanation – that his appellate counsel was ineffective "when he did not raise these issues on [a]ppeal." Dkt. No. 2 at 10.

The Court set an evidentiary hearing "to resolve one of Vasquez's claims" – "that his counsel provided ineffective assistance during the plea stage as he negotiated a guilty plea – and 'induced' and 'coerced' Vasquez into pleading guilty – when, in fact, Vasquez was actually innocent." Dkt. No. 8 at 1 (quoting Dkt. No. 2 at 10). In its order setting an evidentiary hearing and appointing counsel, the Court also explained:

To support his claim of innocence, Vasquez has proffered the affidavits of

> two coconspirators, each of whom claim that Vasquez was not involved with, or aware of, the drug conspiracy for which he pleaded guilty. *See* Dkt. No. 2 at 19, 21-22. In light of this record, the undersigned has determined that an evidentiary hearing is appropriate to resolve Vasquez's claim that his counsel was constitutionally ineffective when he encouraged Vasquez to plead guilty notwithstanding his innocence.

*Id.* at 1-2 (further noting that "[t]he hearing will be limited to Vasquez's claim that counsel was ineffective as set forth above. Neither party should attempt to introduce evidence – or argue – about counsel's performance at sentencing or on direct appeal.").

The Court appointed Vasquez counsel under 18 U.S.C. § 3006A, *see id.* at 2; Dkt. No. 10, but then allowed Baltazar Salazar, who was retained by Vasquez, to substitute for counsel appointed by the Court, *see* Dkt. Nos. 19 & 21.

At the August 27, 2018 evidentiary hearing, *see generally* Dkt. Nos. 23, 24, & 25, Vasquez, through Salazar, failed to call either coconspirator and, relatedly, narrowed the focus of his plea-stage IAC claims to his position that the guilty plea was neither knowing nor voluntary because of trial counsel's alleged inability to adequately translate the written plea documents into Spanish, *see, e.g.,* Dkt. No. 25 at 68-71 ("Mr. Campos was incompetent to translate, and he should never have told the Court that he was competent to translate when he couldn't.... I mean, this is an attorney that clearly knows how to speak Spanish, but he doesn't know the clear legal terms. And again, aiding and abetting is not that important? It's very important. So for those reasons, Your Honor, I think that counsel in this case did not meet the bar, the minimal bar.... Your Honor, again, our theme is this is not general terms – and, you know, counsel for the Government is going to say, Well, generally he kind of knew,

generally he understood he was pleading guilty. Generally? Well, that's not what the statute says. It's very code driven, very specific as to what he's pleading to, and the waiver. He has to knowingly. And I would submit to the Court that based on counsel's representation to this Court, that my client did not knowingly plead guilty and did not knowingly sign the factual resume and did not knowingly get – he did not knowingly get proper counsel in his sentencing, Your Honor.").

## Legal Standards

Relief under Section 2255 is limited to a claim "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *cf. Zalawadia v. Ashcroft*, 371 F.3d 292, 299 (5th Cir. 2004) ("[U]nlike direct review where the correctness of a court or agency order is comprehensively and directly before the court, a habeas court reviews the correctness of such an order only insofar as it relates to 'detention simpliciter.' In other words, habeas is not shorthand for direct review." (citations omitted)).

And a movant "has a burden of sustaining his contentions on a § 2255 motion by a preponderance of the evidence." *United States v. Bondurant*, 689 F.2d 1246, 1251 (5th Cir. 1982) (citing *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980)); *see Coon v. United States*, 441 F.2d 279, 280 (5th Cir. 1971) ("A movant in a collateral attack upon a judgment has the burden to allege and prove facts which would entitle him to relief."); *United States v. Ellis*, Crim. No. 13-286, 2018 WL 1005886, at *2 (E.D.

La. Feb. 21, 2018) ("Ultimately, the petitioner bears the burden of establishing his claims of error by a preponderance of the evidence." (citing *Wright*, 624 F.2d at 558)); *see also Balfour Beatty Rail, Inc. v. Kansas City S. Ry. Co.*, 173 F. Supp. 3d 363, 384 n.9 (N.D. Tex. 2016) ("Proving a fact by a 'preponderance of the evidence' means showing that the existence of a fact is more likely than not. Thus, to prove a fact or claim by a preponderance of the evidence, a party must prove that it is more likely than not that its version of the facts is true." (citing *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 (1983))).

The Court reviews claims of ineffective assistance of counsel under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), under which a movant must demonstrate that the performance of his attorney fell below an objective standard of reasonableness, *see id.* at 687-88. To be cognizable under *Strickland*, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687; *see also Buck v. Davis*, 580 U.S. ____, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)).

The movant also must prove that he was prejudiced by his attorney's substandard performance. *See Strickland*, 466 U.S. at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003). Moreover, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington v. Richter*, 562 U.S. 86, 110 (2011).

To demonstrate prejudice generally, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,'

but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

As to his plea-stage claims, however, Vasquez "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

> This determination depends on assessments such as "the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea[,]" which "depend[s] in large part on a prediction whether the evidence likely would have changed the outcome of a trial." [And a movant] "has to demonstrate that going to trial ... would have given him a reasonable chance of obtaining a more favorable result."

*United States v. Shepherd*, 880 F.3d 734, 743 (5th Cir. 2018) (quoting *United States v. Batamula*, 823 F.3d 237, 240 (5th Cir. 2016) (en banc)); *see also del Toro v. Quarterman*, 498 F.3d 486, 490 (5th Cir. 2007) (a movant "need not prove by a preponderance that the result of the proceedings in the trial court would have been different, but he must sufficiently undermine confidence in the outcome to illustrate that counsel's deficient performance caused the outcome of the proceeding to be unreliable or the proceeding to be fundamentally unfair" (citing *Armstead v. Scott*, 37 F.3d 202, 207 (5th Cir. 1994))).

In sum, establishing *Strickland* prejudice in the plea context "requires showing not only that the petitioner would have gone to trial, but also 'that going to trial ... would have given him a reasonable chance of obtaining a more favorable result.'" *King*

*v. Davis*, 898 F.3d 600, 605 (5th Cir. 2018) (quoting *Shepherd*, 880 F.3d at 743).

To "assess prejudice" in this context, a court must "consider the totality of the circumstances." *Shepherd*, 880 F.3d at 743 (quoting *United States v. Kayode*, 777 F.3d 719, 725 (5th Cir. 2014); citing *Batamula*, 823 F.3d at 240). And *Kayode* provides

> a non-exhaustive list of potentially relevant factors, including: (1) the defendant's "evidence to support his assertion" that he would have gone to trial had he known the likely deportation consequences of his plea; (2) "his likelihood of success at trial"; (3) "the risks he would have faced at trial"; (4) his "representations about his desire to retract his plea"; (5)[where a plea could have immigration consequences, the defendant's] "connections to the United States"; and (6) "the district court's admonishments."

*Batamula*, 823 F.3d at 240 n.4 (quoting *Kayode*, 777 F.3d at 725; original brackets omitted); *see also Shepherd*, 880 F.3d at 744 & n.28.

But, as to sentencing-stage claims and claims directed at Vasquez's appellate counsel, "the Court should consider the prejudice prong under *Strickland*, not under *Hill*." *Alberty v. United States*, No. 3:16-cv-1403-L-BN, 2017 WL 4551214, at *2 (N.D. Tex. Aug. 15, 2017) (citations omitted), *rec. accepted*, 2017 WL 4539405 (N.D. Tex. Oct. 11, 2017); *accord Smith v. Robbins*, 528 U.S. 259, 286 (2000).

## Analysis

I.   <u>Guilty Plea</u>

### A.   Investigation

Under *Strickland*, counsel's duty is "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691. And the United States Court of Appeals for the Fifth Circuit has held that,

"[i]n assessing unreasonableness a heavy measure of deference must be applied to counsel's judgments. A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (citations omitted).

> Without such a showing, "'it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance.'" *Id.* (quoting *United States ex rel. Partee v. Lane*, 926 F.2d 694, 701 (7th Cir. 1991)). The Fifth Circuit has advised: "We must be particularly wary of 'argument[s] [that] essentially come[ ] down to a matter of degrees. Did counsel investigate enough? Did counsel present enough mitigating evidence? Those questions are even less susceptible to judicial second-guessing." *Dowthitt v. Johnson*, 230 F.3d 733, 743 (5th Cir. 2000) (quoting *Kitchens v. Johnson*, 190 F.3d 698, 703 (5th Cir. 1999)) (alterations in original).

*Chapman v. United States*, Nos. EP-14-cv-0062-KC & EP-09-cr-2453-KC-3, 2015 WL 2339114, at *12 (W.D. Tex. May 13, 2015).

Vasquez asserts in a cursory manner that his guilty plea was neither knowing nor voluntary because his trial counsel failed to "properly investigate the basis for the conspiracy." Dkt. No. 2 at 10; *see id.* at 14 (averring "that he received Ineffective Assistance from Counsel in all the pretrial stages, because Counsel failed when he did not investigate the facts of the case"). But these conclusory allegations – coupled with no testimony from trial counsel at the evidentiary hearing that further, specified investigation would have changed any advice that he gave Vasquez concerning his decision to plead guilty, *see generally* Dkt. No. 25 – fail to show, at a minimum, prejudice under *Hill*: "If the petitioner claims that counsel erred by failing to

-12-

investigate or discover certain exculpatory evidence, the prejudice determination will depend upon whether the discovery of such evidence would have influenced counsel to change his advice regarding the guilty plea." *Shepherd*, 880 F.3d at 743 (quoting *Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995); citation omitted); *accord Armstead*, 37 F.3d at 206.

It is also possible that Vasquez may be attempting to connect the two affidavits that he attached to his Section 2255 motion to his counsel's alleged failure to investigate. *See* Dkt. No. 2 at 19 ("DEA agents in charge of the arrest did not want to believe me, when I explained [to] them that [Vasquez] had nothing to do with drug deals; he just lived in my apartment for a period of one month, and ... he never knew of what I was doing."); *id.* at 21 (claiming that "[f]or whatever reasons DEA agents lied when the said that" Vasquez supplied methamphetamine to the cooperating individual).

But, to the extent that the affidavits are offered to show that trial counsel was ineffective for failing to investigate further, such a claim also fails. Even if the information contained in the affidavits is true, Vasquez has not alleged that the information was not already known to counsel. So, in the context of his failure-to-investigate claim, Vasquez has not alleged that any further investigation would have unearthed this evidence – evidence that he (presumably) contends would have changed the outcome of a trial, which is required to show prejudice under *Hill*. *See Shepherd*, 880 F.3d at 743; *Armstead*, 37 F.3d at 206.

### B.    Translation

Vasquez spent much of the evidentiary hearing attempting to establish that trial counsel failed to translate the plea paperwork perfectly and that counsel was further deficient by failing to hire a translator, such that Vasquez's guilty plea was neither knowing nor voluntary. *See* Dkt. No. 25 at 27-48 (direct examination of trial counsel) & 68-71 (closing argument). But, in his Section 2255 motion, Vasquez instead contended that trial counsel "never translated in writing [his] Plea Agreement." Dkt. No. 2 at 11; *see also id.* at 12 ("On this present case, Mr. Vasquez never understood the charges that were filed against him, and his defense counsel did not present a writen Spanish translation of the Plea agreement, neither presented with anciticipation the PSI Report, he just showed it to him a few hours before the sentencing hearing." (no alteration to original)).

Regardless, Vasquez fails to show that trial counsel was deficient. First, trial counsel's testimony demonstrated that he could effectively communicate in Spanish and that he effectively communicated with Vasquez during the criminal case. In an effort to prove otherwise, Vasquez's habeas counsel pressed trial counsel on his failure to provide perfect English-to-Spanish translations of a handful of legal terms of art. That effort was unpersuasive – as trial counsel made clear throughout that line-of-questioning that he could communicate effectively in Spanish.

One example from this questioning is representative: In his closing, habeas counsel argued that "[a]iding and abetting, Count 1, that is the heart of the count that [Vasquez] pled guilty to," Dkt. No. 25 at 68:19-20, and he criticized trial counsel for

translating that term as "helping and helping," *id.* at 34:13-14:

> Q. Okay. How about where it talks about aiding and abetting? What does that – how do you translate that into Spanish?
> A. Helping.
> Q. And abetting?
> A. Helping.
> Q. So your interpretation of aiding and abetting is helping and helping?
> A. Yes, sir.

*Id.* at 34:7-15; *see id.* at 70:1-8 ("And if I don't know the word, Your Honor, I look up a translation. You find it in Google out there for free. There's an app there. It's called Google Translate. There's legal terms. I mean, this is an attorney that clearly knows how to speak Spanish, but he doesn't know the clear legal terms. And again, aiding and abetting is not that important? It's very important.").

But, as the government's counsel argued in closing,

> [i]t's Mr. Vasquez's burden [under *Strickland*'s performance prong] to show that his counsel rendered objectively deficient performance under prevailing professional norms, and what he has shown at most is that Mr. Campos used similar terms that explained the meaning without using the precise legal term which, frankly, is what we do with most defendants anyway, because a whole lot of defendants don't understand what aiding and abetting means, but they all understand what it means to help somebody commit a crime, which is the word that Mr. Campos used for aiding and abetting *Ayudar*, the verb in Spanish to help.

*Id.* at 71:22-72:6; *cf. id.* at 5:12-17 (Vasquez testified that he obtained only a sixth-grade education).

Black's Law Dictionary supports the government's argument by defining "aid and abet" as "to assist or facilitate the commission of a crime, or to promote its accomplishment" and by observing that the two verbs, in the context of criminal intent, do not have truly separate meanings. BLACK'S LAW DICTIONARY 69 (7th ed. 1999) (while

further providing support for the notion that to aid is different than to abet, observing, somewhat in contrast, that "'[t]he phrase "aid and abet" and "aider and abettor" seem unnecessarily verbose … [A]ny aid given with mens rea is abetment; hence to add the word "aid" to the word "abet" is not necessary and is sometimes misleading.'" (quoting ROLLIN M. PERKINS & RONALD N. BOYCE, CRIMINAL LAW 724-25 (3d ed. 1982))).

Based on the testimony that the undersigned heard – essentially, habeas counsel's subjecting trial counsel to a Spanish test on legal terms of art – Vasquez has not carried his burden to show that trial counsel failed to effectively communicate with him in Spanish to such a degree "as to deprive [him] of a fair trial, a trial whose result is reliable" – the standard for showing constitutionally deficient performance. *Strickland*, 466 U.S. at 687. Put another way, even if trial counsel did not exactly translate into Spanish legal terms such as aiding and abetting, forfeiture, direction of the Court, seized, restrained, and factual resume, *see* Dkt. No. 25 at 68, Vasquez has not shown that the lack of an exact, literal translation of these terms (or any other terms) deprived him of the effective assistance of counsel, *cf. Velazquez v. United States*, Nos. 2:10-CR-110 & 2:15-CV-140, 2018 WL 3405499, at *12 (E.D. Tenn. July 12, 2018) (noting, where a defendant complained that "translations of various audio and video recordings [ ] were not exact literal changes" – because they were altered "to make them sound more natural and because certain words and phrases do not have exact equivalencies in the English language" – that "[t]ranslations that are not purely literal are still acceptable evidence in court" (citation omitted)).

But, even if trial counsel's ability to communicate with Vasquez in Spanish

somehow satisfies the deficient performance of *Strickland*, Vasquez fails to show prejudice under *Hill* by not alleging – much less plausibly alleging – that, had trial counsel been a more effective translator (or hired a translator), Vasquez would have better understood his plea paperwork and, more importantly, would have rejected any plea offer and insisted on going to trial. *See Hill*, 474 U.S. at 59; *Kayode*, 777 F.3d at 725; *Shepherd*, 880 F.3d at 743; *see, e.g., United States v. Pena*, 233 F.3d 170, 175 (2d Cir. 2000) (per curiam) (finding, for instance, that, even if "defendant's counsel['s explanation of] the material substance of the plea offer in Spanish" "'fell below an objective standard of reasonableness' under 'prevailing professional norms,'" the movant failed to show a "'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different'" (quoting *Strickland*, 466 U.S. at 687-88, 694)); *cf. Aeby v. United States*, 409 F.2d 1, 2 (5th Cir. 1969) (per curiam) ("The movant under section 2255 must allege specific facts which, if true, would constitute reversible error; otherwise, the district court must deny the motion to vacate.").

## C.    Length of Sentence

Vasquez claims, in the Section 2255 motion, that his trial counsel induced him to plead guilty by promising that he would only serve 3 years of imprisonment, stating that he "was deceived by his former trial counsel, when he said [to Vasquez] that by signing the Plea Guilty Agreement, he was just going to be [sentenced] with 3 years of incarceration; and [he signed the agreement] because he believed in his lawyer." Dkt. No. 2 at 11. That claim not only contradicts Vasquez's sworn testimony at his

rearraignment, *see Vasquez*, No. 3:13-cr-411-D (04) (N.D. Tex.), Dkt. No. 189 at 14-19 (set out above) – testimony that carries "a strong presumption of verity" in this proceeding, *Blackledge v. Allison*, 431 U.S. 63, 73 (1977)[1] – but also contradicts Vasquez's assertion at the evidentiary hearing in this action – that trial counsel told him he would receive only 1 year of imprisonment, *see, e.g.,* Dkt. No. 25 at 20-21.

The undersigned does not credit Vasquez's inconsistent statements in this proceeding, particularly given his sworn testimony from the criminal case, which is consistent with official documents from that proceeding – documents that are "entitled to a presumption of regularity and are accorded great evidentiary weight." *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985). Vasquez also has not "produce[d] independent indicia of the likely merit of [these] allegations." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998). Typically, such proof comes "in the form of one or more affidavits from reliable third parties." *Id.*; *see also, e.g.*, *United States v. Perez*, 227 F. App'x 357 (5th Cir. 2007) (per curiam) (concluding that two affidavits – which described independent accounts with credible details and adequate specificity

---

[1] *See also United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002) ("Reviewing courts give great weight to the defendant's statements at the plea colloquy." (collecting cases)); *United States v. Martinez*, 599 F. App'x 151, 152-53 (5th Cir. 2015) (per curiam) ("Martinez's statements under oath at rearraignment that he was pleading guilty freely and voluntarily 'carry a strong presumption of verity.'" (citation omitted)); *United States v. Gonzalez*, 139 F.3d 899 (table), 1998 WL 127868, at *2 (5th Cir. Mar. 12, 1998) (per curiam) ("As a general rule, 'a defendant will not be heard to refute his testimony given under oath when pleading guilty.'" (quoting *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985))); *United States v. Soliz*, 359 F. App'x 466, 470 (5th Cir. 2009) ("[A] defendant ordinarily may not refute his sworn testimony at a plea hearing while under oath." (citation omitted)).

– were sufficient to support the movant's allegations and warrant an evidentiary hearing).

### D.    Remaining Contentions

Vasquez's remaining plea-stage contentions are that trial counsel failed to object to the government's use of allegedly false evidence – his factual resume – and that trial counsel failed to review the presentencing report with him. While the first contention also could relate to the sentencing stage, Vasquez has failed to offer credible evidence showing that either the factual resume is false or that trial counsel did not review the presentencing report with him – and both contentions are refuted by sworn testimony or on-the-record discussions with the Court in the criminal proceeding. *See Vasquez*, No. 3:13-cr-411-D (04) (N.D. Tex.), Dkt. No. 189 at 21; *id.*, Dkt. No. 188 at 3-4.

And Vasquez does not attempt to establish prejudice under *Hill* as to either contention.

In sum, the Court should deny all claims that trial counsel was constitutionally ineffective during the plea stage of Vasquez's criminal proceeding.

### II.    <u>Sentencing</u>

Vasquez asserts that, during sentencing, trial counsel rendered constitutionally deficient performance by failing to request either a minor-role adjustment or the safety-valve reduction. As to the safety valve, *see* 18 U.S.C. § 3553(f), trial counsel argued that Vasquez was eligible, *see Vasquez*, No. 3:13-cr-411-D (04) (N.D. Tex.), Dkt. No. 189 at 5, and the Court subtracted two levels from his offense-level computation based on the safety valve, *see id.*, Dkt. No. 145-1, ¶ 49. So, as he received the benefit

of the safety valve, as his counsel urged, Vasquez cannot meet *Strickland*'s deficient performance prong on this claim.

As to a minor-role argument, Vasquez contends that he "was just [accompanying, his son-in-law,] Roel Dominguez-Rivera when he delivered the drug to a CI and [even] worse DEA Agent confused or twisted his narration of the event and did not mentioned on his Report that was Roel DominguezRivera the real person that was doing the transaction." Dkt. No. 2 at 14.

"Guideline § 3B1.2(b) provides for a two-level reduction of defendant's offense level if the court finds defendant met his burden of showing, by a preponderance of the evidence, he was a minor participant, meaning he was 'substantially less culpable than the average participant in the criminal activity.'" *United States v. Pompa*, 715 F. App'x 421, 421-22 (5th Cir. 2018) (per curiam) (quoting U.S.S.G. § 3B1.2, cmt. 3A). "It is not enough that a defendant 'does less than other participants; in order to qualify as a minor participant, a defendant must have been peripheral to the advancement of the illicit activity.'" *United States v. Villanueva*, 408 F.3d 193, 204 (5th Cir. 2005) (quoting *United States v. Miranda*, 248 F.3d 434, 446-47 (5th Cir. 2001)).

The Court can classify the two defendants in this action – Vasquez and his son-in-law – as couriers, which "alone [does] not entitle [a defendant] to a role adjustment because a defendant may be a courier without being 'substantially less culpable than the average participant.'" *United States v. Bermudez-Trevino*, 283 F. App'x 258, 260 (5th Cir. 2008) (per curiam) (citation omitted). And, at sentencing – in response to a family member's characterization of Vasquez's role as merely renting an apartment to

-20-

his daughter and co-defendant son-in-law – Judge Fitzwater felt compelled to respond:

> I normally do not specifically address the comments that are made by family members and other supporters on behalf of a defendant because typically it is not necessary to do so. And I want to encourage family members and others to support their loved ones at the time of sentencing.
>
> I do think it is important, however, that there not be some misimpression that Mr. Vasquez is being sentenced merely because he rented an apartment to someone.
>
> Specifically, I point to paragraph 35 of the presentence report which indicates that on September 8, 2013, Mr. Vasquez was driving a Ford truck occupied by Mr. Dominguez when it arrived at the parking lot at the Lowe's store in Dallas, and that while under surveillance a confidential source entered the truck and retrieved approximately five and a half kilograms of methamphetamine from Mr. Vasquez and Mr. Dominguez, and that Mr. Vasquez and Mr. Dominguez delivered the methamphetamine on behalf of another person.
>
> So the point is – and I'm citing this as an example. This is not a case where a loved one is being punished because he rented an apartment and didn't do anything else. There is direct surveillance of Mr. Vasquez in the delivery of a large quantity of a very dangerous drug.

*Vasquez*, No. 3:13-cr-411-D (04) (N.D. Tex.), Dkt. No. 189 at 9:14-10:15.

In light of the standard to prove a minor-role adjustment and the Court's view of Vasquez's role in the offense, Vasquez has not shown that, had trial counsel argued for a minor-role adjustment, it would have been successful and thus show that counsel violated either prong of *Strickland*.

III.   Appeal

Vasquez argues that his appellate counsel's failure to make the arguments Vasquez himself makes in his Section 2255 motion shows that appellate counsel was constitutionally ineffective. *See* Dkt. No. 2 at 10. But, for all the reasons explained above, "[b]ecause [Vasquez] has not shown that the argument[s] he contends counsel should have raised on appeal [have] any basis in law or fact, he cannot show that his

appellate counsel was constitutionally ineffective for failing to include it in the merits brief on direct appeal." *Thomas v. United States*, No. 3:14-cv-3740-D-BN, 2016 WL 3017240, at *3 (N.D. Tex. Apr. 29, 2016) (citation omitted), *rec. adopted*, 2016 WL 2988863 (N.D. Tex. May 24, 2016).

**Recommendation**

The Court should deny Movant Ernesto Vasquez's Section 2255 motion.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 30, 2019

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

-22-